---

(21 Misc. Rep. 281.)

### In re GILL.

### In re THOMPSON'S ESTATE.

#### (Surrogate's Court, Madison County. September, 1897.)

TRUSTEE—COMPENSATION.

A trustee of an estate worth $19,000 gave bond in the sum of $36,000, and administered the trust faithfully for 14 years, when he resigned. The estate being safely invested when he took charge, he did not change the securities, except as to money paid in upon them. He was no relation to the

beneficiaries, and was under no obligation to accept the trust. *Held*, that in addition to the statutory commission on the income, amounting to about $60 per year, it was proper to allow him compensation to the amount of $390.

Application by a testamentary trustee for judicial settlement of his account.

H. B. Coman, for trustee.

S. B. Cloyes, for legatees.

KENNEDY, S. Calvin Thompson died in 1866, leaving a will in and by which he left the use of his estate to his only daughter, and bequeathed the remainder to her children or descendants, if any, but, in case there were none, then to certain other persons who might be in existence at the time of his daughter's death. The trustee named in the will having died, Sumner Gill was appointed in his place, and has acted as such for 14 years. The amount of trust funds which came into his hands was $18,000 of personal property, and some real estate. By reason of his old age and the precarious condition of his health, he asked leave to resign, whereupon a judicial settlement of his accounts was had, and a new trustee was appointed in his place. During his term of office the trustee has received from the estate, for his services, only the commissions allowed by law upon the income thereof, amounting yearly to about the sum of $60. The legatees object to the allowance of any further sum to the trustee, because of the fact that he has been amply paid for his yearly services, and has been permitted to resign before the completion of the trust. The respective counsel agree that Mr. Gill is not entitled, as of course, to commissions upon the $19,000 of trust funds now in his hands, nor to any compensation other than that which he has already received, except such as the surrogate, in his discretion, deems just. The amount claimed by the trustee is $390; being a sum equal to the legal commissions upon the $19,000 of trust funds now in his hands, provided the trust had terminated. In view of the fact that Mr. Gill has acted as trustee for 14 years, we do not deem the sum claimed by him as excessive or unjust. The simple fact that the estate was safely invested when he commenced to act as trustee, that he simply retained possession and control of the securities, reinvesting the money paid upon any of them, and that he was not compelled to spend a large amount of time each year in active labor in caring for the property, ought not to exclude him from compensation beyond the commissions which he received upon the income of the estate. Compensation in this case should not be based upon the exact number of days' labor he may have performed in managing the estate. Due weight should be given to the amount of the trust fund, the manner in which he has discharged his duties, the length of time he has acted, and other circumstances which usually attend or are connected with the inception and completion of such duties. In this case the trustee was obliged to give a bond in the sum of $36,000, thus requiring him to procure sureties who could justify in the sum of $72,000. To do this, he was compelled to get personal friends to sign his bond and to become and remain liable thereon, for the penalty thereof, for 14 years. The financial condition of Mr. Gill enabled him to procure the bond in question, and by this act the

legatees have had the absolute safety of the estate assured to them for this length of time, by persons who were not related to them, had no interest in the matter, and were under no obligation to become responsible to them for the safety of the trust fund. To obtain the same amount of security for the future, the new trustee is obliged to pay $45 a year to a surety company. Assuming that the sum paid to the company is what it is fairly worth to act as surety in this case, the compensation claimed by Mr. Gill is much less than the amount charged by the company for acting as surety upon the trustee's bond, being only $28 a year. The fact that he may not have paid anything to his sureties for signing his bond and continuing thereon for 14 years we regard as immaterial. It is sufficient if his ability, his character, and wealth were the means by which they were induced to sign his bond. The act of procuring security for 14 years was of value to the legatees, as it made their estate absolutely secure against loss, and there is no injustice in requiring them to pay for the ample protection it has had for so long a time. The law permits the expense charged by a surety company for furnishing bonds to be deducted from the assets of the estate, and we know of no reason why Mr. Gill should not receive compensation for the performance of a similar act for the benefit of the legatees. Basing the compensation to which we think Mr. Gill is entitled upon the sole ground of furnishing security for the safety and protection of the trust fund, and estimating its value according to the rate charged by guaranty companies, does not appear in this case to be an unjust rule; but, as the law limits the amount of compensation of a trustee, no more than the amount claimed can be decreed to him.

In addition to the above reasons, there are other facts which should be taken into consideration in estimating the value of the trustee's services. Mr. Gill was not a relative of the legatees, and therefore under no social obligation to aid them by the acceptance of the trust, and render services without ample remuneration. He was a wealthy and active business man in the vicinity of the parties interested. Only some one of his character and financial ability could be appointed, because the amount of the bond was so large, and also because of the possible long continuance of the trust. He could not afford to accept such a trust if his recompense was to be the small amount of commissions he might receive upon the yearly income of the estate. The responsibility for $18,000, and the supervision of its investment and reinvestment when necessary, was the cause of much care and anxiety, and required the exercise of attention and good judgment, lest some loss might occur, which he, his estate, or his bondsmen must make good. The hazards of defective title to real property by reason of the mistakes of search clerks, the chance of loss because of failure to collect interest or foreclose mortgages at the proper time, the errors of judgment and losses therefrom in making investments, and the possibility, always existing, that in case of his death his heirs might become involved in litigation over the fund, or at least have serious trouble and annoyance in adjusting the accounts of the trustee, are also matters which ought to be considered. Of course, there will always be trustees of estates, but one unfamiliar with the duties and

responsibilities of a long trust in caring for a large fund cannot estimate or appreciate the anxieties and risks that generally attend it. It is not unjust that compensation should accompany responsibility assumed for the benefit of others in the settlement of estates. A trustee should be paid for the use and exercise of those qualifications which have made his trusteeship a success. The resignation or death of a trustee, after long and successful management of a large estate, ought not to be made the excuse for withholding payment for valuable services, provided the law has not prohibited courts from making such allowance as seems just and equitable. For the reasons above stated, we think Mr. Gill fairly and justly entitled to the $390 claimed by him, being only about $28 per year, for 14 years, over and above the commissions received by him for collecting and paying out the income of the estate. A decree will therefore be entered accordingly. Decreed accordingly.